The STATE of Ohio, Appellee,

v.

HANEY, Appellant.

[Cite as *State v. Haney*, 180 Ohio App.3d 554, 2009-Ohio-149.]

Court of Appeals of Ohio,
Fourth District, Athens County.

No. 08CA1.

Decided Jan. 12, 2009.

556

C. David Warren, Athens County Prosecuting Attorney, and Sabrina J. Ennis, Assistant Prosecuting Attorney, for appellee.

Timothy Young, Ohio Public Defender, and Katherine A. Szudy, Assistant Ohio Public Defender, for appellant.

FRENCH, Judge.

{¶ 1} Defendant-appellant, Benjamin Haney, appeals from a judgment of conviction and sentence entered by the Athens County Court of Common Pleas pursuant to his plea of guilty to two counts of aggravated robbery, with gun specifications, and one count of failing to comply with an order of a police officer. For the following reasons, we affirm in part and reverse in part and remand the matter to the trial court.

## I. The Procedural History and Facts

{¶ 2} On February 26, 2007, an Athens County Grand Jury indicted appellant on two counts of aggravated robbery, in violation of R.C. 2911.01(A)(1), felonies of the first degree, with gun specifications, and one count of failing to comply with an order of a police officer, in violation of R.C. 2921.331(B), a felony of the third degree. Appellant initially entered a plea of not guilty by reason of insanity pursuant to R.C. 2943.03(E) and Crim.R. 11(A). The trial court ordered appellant to undergo a forensic psychiatric examination to determine his mental condition at the time of the commission of the offense. After this first evaluation was completed, appellant filed a notice of intent to obtain a second evaluation and a request for an indigency determination. After conducting a hearing, the court ordered a second evaluation and found appellant to be indigent.

{¶ 3} At a change-of-plea hearing on September 25, 2007, appellant pleaded guilty to the offenses set forth in the indictment. The state gave a statement of the facts, as follows:

As far as the statement of facts, on February 13, 2007, * * * the defendant initially held up, * * * went to the, was traveling in his vehicle, wrecked it, and * * * crashed it. He went to the Gillogly, he was at the Gillogly residence and Mr. Casto came over to the residence to assist the Gilloglys, who had seen the defendant there. While Mr. Casto was there, he held Mr., he held a gun on Mr. Casto and stole his vehicle. This occurred in Meigs County. He proceed * * * and that was on 689. He proceeded on * * * with Mr. Casto's vehicle until he wrecked near the Albany fairgrounds in Athens County. At that time Mrs. Lonas, went to provide assistance to the defendant, thinking that he had wrecked and would need some assistance. Instead at that time, he then held a gun to Mrs. Lonas, chambering a round, and stole her 2001 silver Monte Carlo. After stealing the Monte Carlo, he drove off at a high rate of speed. A number of deputies were in * * * pursuit. And eventually Deputy Sheridan was able, the defendant actually swerved off the road and * * * came to a stop and

Deputy Sheridan was able to approach the vehicle or keep him at bay until other deputies could * * * respond. During the time he was able to respond to commands, * * * Sergeant Childs indicated that he had asked him to unlock the door, the defendant was able to do that. And he was able to speak and to walk and had, had the ability to commit all of these crimes, that he has, * * *, had done and which brings him before the Court today.

{¶ 4} Pursuant to a plea agreement, the state recommended that appellant be sentenced to a 21–year prison term. After the court ordered a presentence investigation report ("PSI"), it conducted a sentencing hearing, where it adopted the state's recommendation. Specifically, the court sentenced appellant to a seven-year prison term for each count of aggravated robbery, along with a mandatory three-year prison term for each of the gun specifications. The court also sentenced appellant to a one-year prison term for the charge of failure to comply with an order of a police officer. The court ordered all counts to be served consecutive to each other for a total of 21 years. Moreover, the court ordered appellant to pay restitution to the victims, Mr. Casto and Mrs. Lonas, in the amount of $140 and $8,689.00 respectively, and to pay restitution to the victims' insurance companies, State Farm and Western Reserve, in the amount of $4,300 and $1,810.79 respectively. Appellant now appeals.

## II. Assignments of Error

{¶ 5} Appellant presents six assignments of error:

Assignment of Error I

The trial court erred by ordering Mr. Haney to pay $14,939.79 in restitution without considering Mr. Haney's present and future ability to pay as required by R.C. 2929.19(B)(6).

Assignment of Error II

Trial counsel provided ineffective assistance, in violation of the Sixth and Fourteenth Amendments to the United States Constitution and Section 10, Article I of the Ohio Constitution, for failing to object to the trial court's imposition of $14,939.79 in restitution without considering whether Mr. Haney had the present and future ability to pay.

Assignment of Error III

The trial court committed plain error and denied Mr. Haney due process of law by imposing $14,939.79 in restitution without considering whether Mr. Haney had the present and future ability to pay the amount. Fifth and Fourteenth Amendments to the United States Constitution; Section 16, Article I of the Ohio Constitution.

Assignment of Error IV

The trial court erred when it ordered Mr. Haney to pay restitution to the victim's insurance carriers.

Assignment of Error V

Mr. Haney's indictment was defective as it failed to charge the culpable mental state that was required in order for the State to convict Mr. Haney for aggravated robbery. Fifth and Fourteenth Amendments to the United States Constitution; Section 10, Article I of the Ohio Constitution; Crim.R. 7(B).

Assignment of Error VI

The trial [sic] erred when it sentenced Mr. Haney to a cumulative prison term of twenty-one years. Fourteenth Amendment to the United States Constitution and Section 16, Article I of the Ohio Constitution.

### III. Sufficiency of the Indictment

{¶ 6} We begin our analysis by addressing appellant's fifth assignment of error, in which appellant contends that his indictment was defective because it failed to charge the culpable mental state for the offense of aggravated robbery. Relying on the Supreme Court of Ohio's decision in *State v. Colon*, 118 Ohio St.3d 26, 2008-Ohio-1624, 885 N.E.2d 917 (*"Colon I"*), he contends that his aggravated-robbery convictions must be reversed. We disagree.

{¶ 7} In *Colon I*, the Supreme Court of Ohio held: "When an indictment fails to charge a mens rea element of a crime and the defendant fails to raise that defect in the trial court, the defendant has not waived the defect in the indictment." Id. at syllabus. In *Colon I*, the defendant had been charged with robbery, in violation of R.C. 2911.02(A)(2). His indictment stated that defendant "in attempting or committing a theft offense, as defined in Section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense upon [the victim, the defendant did] inflict, attempt to inflict, or threaten to inflict physical harm on [the victim]." Id. at ¶ 2. The court in *Colon I* found that the indictment failed to contain a mens rea for the actus reus element stated in subsection (2), i.e., "[i]nflict, attempt to inflict, or threaten to inflict physical harm on another." The court reasoned that because R.C. 2911.02(A)(2) does not specify a particular degree of culpability for the act of "inflict[ing], attempt[ing], to inflict, or threaten[ing] to inflict physical harm" and because the statute does not plainly indicate that strict liability is the mental standard, the catchall culpable mental state of "recklessness" applied. The court concluded that because the mens rea "recklessness" was missing from the indictment, the indictment was defective because it failed to charge an essential element of the offense. Id. at ¶ 19. The court also concluded that the defective indictment resulted in a lack of notice to the defendant of the mens rea required to commit the offense, and that because

the defect clearly permeated the entire criminal proceeding, the defect resulted in structural error. Id. at ¶ 32. The *Colon I* court then reversed the conviction.

{¶ 8} On reconsideration, the Supreme Court of Ohio declared that *Colon I* was prospective and "applies only to those cases pending on the date *Colon I* was announced." *State v. Colon*, 119 Ohio St.3d 204, 2008-Ohio-3749, 893 N.E.2d 169, ¶ 5 ("*Colon II*"). The court in *Colon II* also stated that "the facts that led to our opinion in *Colon I* are unique[,]" noting that the defective indictment was not the only error that had occurred, but that the defective indictment resulted in several other violations of the defendant's rights. Id. at ¶ 6. Specifically, the court noted the following: (1) there was no evidence to show that the defendant had notice that recklessness was an element of the crime of robbery; (2) there was no evidence that the state argued that the defendant's conduct was reckless; (3) the trial court did not include recklessness as an element of the crime when it instructed the jury; and (4) in closing argument, the prosecuting attorney treated robbery as a strict-liability offense. Id. at ¶ 6.

{¶ 9} The court in *Colon II* went on to conclude that the structural-error analysis for defective indictments is "appropriate only in rare cases * * * in which multiple errors at the trial follow the defective indictment." Id. at ¶ 8. The court then stated, "Seldom will a defective indictment have this effect, and therefore, in most defective indictment cases, the court may analyze the error pursuant to Crim.R. 52(B) plain-error analysis. Consistent with our discussion herein, we emphasize that the syllabus in *Colon I* is confined to the facts in that case." Id.

{¶ 10} As set forth above, appellant was charged with two counts of aggravated robbery under R.C. 2911.01, which states:

(A) No person, in attempting or committing a theft offense, as defined in section 2913. 01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall do any of the following:

(1) Have a deadly weapon on or about the offender's person or under the offender's control *and either display the weapon, brandish it, indicate that the offender possesses it, or use it*. (Emphasis added.)

{¶ 11} Appellant argues that in the absence of any statutory language as to the requisite degree of culpability associated with the requirement that the offender *either display the weapon, brandish it, indicate that the offender possesses it, or use it,* the catchall mental state of recklessness should apply. Appellant maintains that the indictment was defective because it failed to include this material element of mens rea and that pursuant to *Colon I*, his case is laden with structural errors that require us to reverse his conviction.

{¶ 12} Recently, the Tenth District Court of Appeals concluded that the holding of *Colon I* was inapplicable to a conviction for aggravated robbery under R.C. 2911.01(A)(1). See *State v. Hill,* Franklin App. No. 07AP–889, 2008-Ohio-4257, 2008 WL 3878363. In *Hill,* the court initially noted that it was "reluctant to expansively construe *Colon I's* holding to statutes not considered by *Colon I,* especially since *Colon II* emphasized that the syllabus in *Colon I* is confined to the facts in that case." Id. at ¶ 34. The court in *Hill* ultimately concluded that *Colon I* was inapplicable to aggravated-robbery convictions under R.C. 2911.01(A)(1) based upon its prior opinion in *State v. Ferguson,* Franklin App. No. 07AP–640, 2008-Ohio-3827, 2008 WL 2932005. We adopt the court's reasoning in *Ferguson* and conclude that *Colon I* does not require reversal of appellant's aggravated-robbery convictions.

{¶ 13} As noted in *Ferguson,* the Supreme Court of Ohio has previously addressed whether recklessness is an element of robbery under R.C. 2911.02(A)(1).[1] See *State v. Wharf* (1999), 86 Ohio St.3d 375, 715 N.E.2d 172. In *Wharf,* the defendant was indicted for aggravated robbery, in violation of R.C. 2911.01(A)(1). The trial court later amended the indictment to robbery, in violation of R.C. 2911.02(A)(1). At trial, the defendant proposed a jury instruction that before the jury could find him guilty of robbery, it must find that he acted *recklessly* in having a deadly weapon on or about his person. Id. at 376, 715 N.E.2d 172. The trial court declined to give the proposed jury instruction, and the defendant was convicted. On appeal, the defendant argued that the trial court erred in failing to instruct the jury that "recklessly" was the required mental state for the deadly-weapon element of robbery under R.C. 2911.02(A)(1). The appellate court rejected the defendant's argument and affirmed, but entered an order certifying a conflict with judgments of other courts of appeals.

{¶ 14} In *Wharf,* the Supreme Court of Ohio held that "the General Assembly intended that a theft offense, committed while an offender was in possession or control of a deadly weapon, is robbery and no intent beyond that required for the theft offense must be proven." Id. at 377, 715 N.E.2d 172. Further, the court held that "by employing language making mere possession or control of a deadly weapon, as opposed to actual use or intent to use, a violation, it is clear to us that the General Assembly intended that R.C. 2911.02(A)(1) be a strict liability offense." Id. at 378, 715 N.E.2d 172. Thus, the Supreme Court of Ohio has determined that R.C. 2911.02(A)(1) is a strict-liability offense and that the deadly-weapon element does not require the mens rea of recklessness.

---

1. R.C. 2911.02(A)(1) states: "No person, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, shall * * * [h]ave a deadly weapon on or about the offender's person or under the offender's control."

{¶ 15} Here, appellant argues that robbery under R.C. 2911.02(A)(1) is a lesser-included offense of aggravated robbery under R.C. 2911.01(A)(1) and that the additional element under the aggravated-robbery statute, i.e., that the offender display, brandish, use, or indicate that he or she has a weapon, requires the mens rea of recklessness. He relies on dicta in *Wharf* that arguably suggests that this additional element may distinguish the offenses for purposes of analyzing the requisite criminal intent. See *Ferguson*, 2008-Ohio-3827, 2008 WL 2932005, at ¶ 45, quoting *Wharf*, 86 Ohio St.3d at 379, 715 N.E.2d 172 ("A violation of R.C. 2911.02(A)(1) will also be found if the offender has a deadly weapon on or about his person, or under his control, while fleeing after such offense or attempt. Thus, no use, display, or brandishing of a weapon, or intent to do any of the aforementioned acts, is necessary according to the plain language of the statute").

{¶ 16} We note, however, that other courts have applied the holding in *Wharf* to aggravated robbery under R.C. 2911.01(A)(1). See *Ferguson* at ¶ 46, citing *State v. Kimble*, Mahoning App. No. 06MA190, 2008-Ohio-1539, 2008 WL 852074, at ¶ 29 (relying on *Wharf* for the proposition that the only mens rea the state must prove is that required for theft in finding evidence sufficient to prove complicity to commit aggravated robbery under R.C. 2911.01(A)(1)). See also *State v. Thompson*, Ashland App. No. 08COA018, 2008-Ohio-5332, 2008 WL 4572520, ¶ 31; *State v. Peterson*, Cuyahoga App. No. 90263, 2008-Ohio-4239, 2008 WL 3870695, ¶ 15.

{¶ 17} Based on the foregoing, we conclude that the holding in *Wharf*—that R.C. 2911.02(A)(1) requires no mens rea other than that required for the theft offense—is analogous to R.C. 2911.01(A)(1). Here, appellant was charged with aggravated robbery under R.C. 2911.01(A)(1), and because a violation of that provision requires no intent beyond that required for the theft offense, his indictment was not defective for its failure to include the mens rea of recklessness. Accordingly, we find the holding in *Colon I* to be inapplicable to appellant's convictions for aggravated robbery under R.C. 2911.01(A)(1).

{¶ 18} Nonetheless, even if we found that *Colon I* applies to this case, we conclude that in light of *Colon II*, reversal of appellant's conviction is not required. Initially, we note that *Colon II* is distinguishable because here appellant failed to raise the issue of the defective indictment with the trial court and then later entered a guilty plea to the offenses charged in the indictment, including both counts of aggravated robbery. Generally, a defendant who pleads guilty or no contest waives all nonjurisdictional defects in the proceedings. See Crim.R. 11(B)(1); see also *United States v. Broce* (1989), 488 U.S. 563, 109 S.Ct. 757, 102 L.Ed.2d 927; *State v. Fitzpatrick*, 102 Ohio St.3d 321, 2004-Ohio-3167, 810 N.E.2d 927, at ¶ 78, quoting *Menna v. New York* (1975), 423 U.S. 61, 62, 96

S.Ct. 241, 46 L.Ed.2d 195, fn. 2. (" 'a guilty plea * * * renders irrelevant those constitutional violations not logically inconsistent with the valid establishment of factual guilt and which do not stand in the way of conviction if factual guilt is validly established' "). Thus, appellant's guilty plea waived his right to challenge any alleged defect in the indictment. See *State v. Davis*, Highland App. No. 06CA21, 2007-Ohio-3944, 2007 WL 2216367, ¶ 18, citing *Stacy v. Van Coren* (1969), 18 Ohio St.2d 188, 47 O.O.2d 397, 248 N.E.2d 603; see also *State v. Salter*, Cuyahoga App. No. 82488, 2003-Ohio-5652, 2003 WL 22413518. His "guilty plea broke the chain of events which preceded it in the criminal process." See *Davis* at ¶ 18, citing *State v. Miller*, Meigs App. No. 95CA10, 1996 WL 571488. As we stated in *Miller*, "By pleading guilty * * *, appellant waived any right in questioning the validity of his indictment on appeal. In effect, appellant induced the prosecution and the court to proceed upon the * * * indictment upon the basis that it was sufficient to charge an offense * * *." Id.

{¶ 19} Even if *Colon II* applies to this case, and appellant did not waive his right to challenge any defect in the indictment, we find that this case is not one of the rare defective-indictment cases that resulted in "multiple errors that are inextricably linked to the flawed indictment such as those that occurred in *Colon I*." As such, plain-error analysis, pursuant to Crim.R. 52(B), is appropriate. For there to be plain error, there must be a plain or obvious error that "affect[s] 'substantial rights,' which the court has interpreted to mean but for the error, 'the outcome of the trial clearly would have been otherwise.' " *State v. Litreal*, 170 Ohio App.3d 670, 2006-Ohio-5416, 868 N.E.2d 1018, ¶ 11, quoting *State v. Barnes* (2002), 94 Ohio St.3d 21, 27, 759 N.E.2d 1240. We take notice of plain error with the utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice. *State v. Gardner*, 118 Ohio St.3d 420, 2008-Ohio-2787, 889 N.E.2d 995, ¶ 78.

{¶ 20} Appellant argues that his mental state was at issue and points to the fact that he received two psychological evaluations. He also notes that defense counsel indicated at the sentencing hearing that appellant was "suicidal" on the day that the crimes were committed. He argues that had he received notice that the state had to prove the mens rea of recklessness, he *may not* have pleaded guilty. While appellant originally entered pleas of not guilty by reason of insanity, which prompted the psychological evaluations, he later pleaded guilty to the indictment. At the plea hearing, the state provided a statement of the facts, which we set forth previously. Defense counsel took no exception to the facts as given and stated, "I think it is a factual statement that is supported by evidence that could have been brought before the Court." Based on our review of the record, we find no plain error in the proceedings below. Therefore, we overrule appellant's fifth assignment of error.

### IV.   Consideration of the Ability to Pay Restitution

{¶ 21} Because appellant's first, second, and third assignments of error raise related arguments, we address them together.  In his first assignment of error, appellant argues that the trial court erred in ordering him to pay $14,939.79 in restitution without considering his present and future ability to pay as required by R.C. 2929.19(B)(6).  In his second assignment of error, appellant argues that trial counsel provided ineffective assistance because he failed to object to the court's imposition of restitution without considering whether he had the present and future ability to pay.  In his third assignment of error, appellant argues that the trial court's failure to comply with R.C. 2929.19(B)(6) constituted plain error.

{¶ 22} As a financial sanction, R.C. 2929.18(A)(1) allows the court to order a felony offender to make restitution to the victim of the offender's crime in an amount based on the victim's economic loss.  Before ordering an offender to pay a financial sanction such as restitution, R.C. 2929.19(B)(6) requires the court to "consider the offender's present and future ability to pay the amount of the sanction or fine."  "[W]hen a trial court has imposed a financial sanction without even a cursory inquiry into the offender's present and future means to pay the amount imposed, the failure to make the requisite inquiry is an abuse of discretion."  *State v. Henderson,* Vinton App. No. 07CA659, 2008-Ohio-2063, 2008 WL 1914805, ¶ 5, citing *State v. Bemmes,* (Apr. 5, 2002) Hamilton App. No. C–010522, 2002 WL 507337, *2.  In other words, courts have no discretion to apply an improper analysis or process in deciding an issue even where they may have discretion in the ultimate decision on the merits.  Id., citing *State v. Nayar,* Lawrence App. No. 07CA6, 2007-Ohio-6092, 2007 WL 3407169, ¶ 33.

{¶ 23} Appellant argues that there is no evidence in the record showing that the trial court considered his present and future ability to pay restitution.  We have consistently held that " ' "[a]lthough preferable for appellate review, a trial court need not explicitly state in its judgment entry that it considered a defendant's ability to pay a financial sanction.  Rather, courts look to the totality of the record to see if this requirement has been satisfied." ' "  *State v. Rickett,* Adams App. No. 07CA846, 2008-Ohio-1637, 2008 WL 901480, ¶ 6, quoting *State v. Smith,* Ross App. No. 06CA2893, 2007-Ohio-1884, 2007 WL 1165822, ¶ 42, quoting *State v. Ray,* Scioto App. No. 04CA2965, 2006-Ohio-853, 2006 WL 439291, ¶ 26.  We have explained that the trial court complies with R.C. 2929.19(B)(6) when the record shows that the court considered a PSI that provides pertinent financial information regarding the offender's ability to pay restitution.  *Rickett* at ¶ 6, citing *Smith* at ¶ 42.  Although the trial court did not explicitly state in its restitution order that it had considered appellant's present and future ability to

pay, it did state that it had considered the record and the PSI. On appellant counsel's motion, we ordered supplementation of the record with the PSI, which is properly part of the record on appeal in this case. See *State v. Martin* (2000), 140 Ohio App.3d 326, 327, 747 N.E.2d 318 ("Although the PSI report is not part of the public record, it is part of the appellate record for our review"). That report contains information regarding appellant's age, education, physical and mental health, military service, and employment history. It also describes his "financial condition," detailing his assets and debts. Therefore, the record supports the conclusion that the trial court sufficiently considered appellant's present and future ability to pay restitution. See *Martin* at 327–328 (holding that consideration of a PSI that contains information about the offender's age, health, education, and work history satisfies the requirements of R.C. 2929.19(B)(6)).

{¶ 24} Furthermore, our review of the record shows that the trial court was fully aware of appellant's financial situation prior to ordering appellant to pay restitution. As appellant correctly points out, the trial court had previously conducted a hearing on whether appellant was indigent for purposes of receiving a psychological evaluation at public expense. While the court ultimately found appellant to be indigent for purposes of receiving the evaluation and then later for purposes of appeal, this finding does not necessarily mean that the trial court failed to consider appellant's present and future ability to pay. See *Rickett* at ¶ 7 (noting that the fact that the trial court found defendant to be indigent for purposes of appeal did not necessarily mean that the trial court failed to consider his present and future ability to pay). Appellant was 27 years old at the time of sentencing and if he serves his full 21–year sentence, he will leave prison at age 48. Given his age, the information provided in the PSI, and the information obtained during the indigency hearing, the trial court could reasonably conclude that appellant would have the ability to pay the financial sanction in the future. Therefore, we cannot conclude that appellant's current financial position necessarily means that the trial court did not consider appellant's present and future ability to pay.

{¶ 25} Because we conclude that the court committed no error, plain or otherwise, in failing to consider appellant's present and future ability to pay $14,939.79 in restitution, we overrule appellant's first and third assignments of error.

{¶ 26} We also reject appellant's second assignment of error. In order to prevail on a claim of ineffective assistance of counsel, appellant must show (1) his counsel's performance was deficient in that it fell below an objective standard of reasonable representation, and (2) the deficient performance prejudiced his defense so as to deprive him of a fair trial. *State v. Smith* (2000), 89 Ohio St.3d

323, 327, 731 N.E.2d 645, citing *Strickland v. Washington* (1984), 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674; *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, paragraph two of the syllabus. To establish prejudice, appellant must show that there exists a reasonable probability that were it not for counsel's errors, the result of the proceeding would have been different. *State v. White* (1998), 82 Ohio St.3d 16, 23, 693 N.E.2d 772; *Bradley* at paragraph three of the syllabus. When considering whether trial counsel's representation amounts to a deficient performance, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland* at 689, 104 S.Ct. 2052, 80 L.Ed.2d 674. Thus, "the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Id.

{¶ 27} Because we conclude that the trial court did not err in failing to consider appellant's present and future ability to pay, appellant fails to demonstrate any deficient performance on the part of trial counsel in failing to object on that basis or any resulting prejudice. Accordingly, we overrule appellant's second assignment of error.

## V. Restitution to Third Parties

{¶ 28} Appellant argues that the trial court committed plain error when it ordered him to pay restitution to State Farm and Western Reserve, the victims' insurance carriers. Specifically, he argues that R.C. 2929.18(A)(1) does not authorize the trial court to award restitution to third parties. The state concedes error on this point, and we agree.

{¶ 29} We have previously held that under the current version of R.C. 2929.18(A)(1), "trial courts are no longer permitted to award restitution in criminal cases to third parties, including insurance carriers." *State v. Baltzer*, Washington App. No. 06CA76, 2007-Ohio-6719, 2007 WL 4374407, ¶ 41; see also *State v. Smith*, Washington App. No. 07CA25, 2008-Ohio-142, 2008 WL 160922, ¶ 4. As we noted in *Baltzer*, the version of R.C. 2929.18(A)(1) in effect until June 1, 2004, specifically provided for restitution to the victim of the crime or "to 'third parties for amounts paid to or on behalf of the victim.'" Id. (quoting former R.C. 2929.18(A)(1)). However, the General Assembly amended R.C. 2929.18(A)(1) to delete the provision allowing trial courts to award restitution to third parties. "In the General Assembly's final analysis of 125 Sub. H.B. 52, it noted that the bill '*repeals* all of the language that pertains to the restitution order requiring that reimbursement be made to third parties, including governmental agencies or persons other than governmental agencies, for amounts paid to or on behalf of the victim or any survivor of the victim for economic loss * * *.'" *State v. Didion*, 173 Ohio App.3d 130, 2007-Ohio-4494, 877 N.E.2d 725, ¶ 27 (quoting 125

Am.Sub.H.B. No. 52). See also *State v. Kreischer*, 109 Ohio St.3d 391, 2006-Ohio-2706, 848 N.E.2d 496, ¶ 1 (suggesting that trial courts may no longer award restitution to third parties for payments made to or on behalf of the victim because "the legislature amended R.C. 2929.18 to delete all references to restitution for third parties").

{¶ 30} In light of the state's concession and our holding in *Baltzer*, we conclude that the trial court committed plain error in ordering appellant to pay restitution to State Farm and Western Reserve. Accordingly, we sustain appellant's fourth assignment of error.

## VI.  Sentencing

{¶ 31} In his sixth assignment of error, appellant argues that the trial court erred when it sentenced him to a cumulative prison term of 21 years. He argues that the facts presented during the sentencing hearing do not support any sentence above three-year, concurrent prison terms for each of the aggravated-robbery convictions.

{¶ 32} Recently, the Supreme Court of Ohio addressed the issue of the proper standard of review when reviewing a trial court's sentencing decision and set forth a two-step process. See *State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124. In this plurality decision, the court determined that an appellate court must first "examine the sentencing court's compliance with all applicable rules and statutes in imposing the sentence to determine whether the sentence is clearly and convincingly contrary to law. If this first prong is satisfied, the trial court's decision shall be reviewed under an abuse-of-discretion standard." Id. at ¶ 4. An abuse of discretion is "more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140.

{¶ 33} Trial courts "have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or give their reasons for imposing maximum, consecutive, or more than the minimum sentences." *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, ¶ 100. However, in sentencing a felony offender, the sentencing court must still consider the general guidance factors contained in R.C. 2929.11 and R.C. 2929.12. *Kalish* at ¶ 13; *Foster* at ¶ 42. As we noted in *State v. Ward*, Meigs App. No. 07CA9, 2008-Ohio-2222, 2008 WL 1991614, the court must impose a sentence that is reasonably calculated to achieve the two overriding purposes of felony sentencing, i.e., protecting the public from future crime by the offender and others and punishing the offender. Id. at ¶ 19; R.C. 2929.11(A). The court must also consider the factors set forth in R.C. 2929.12(B) and (C) relating to the seriousness of the offender's conduct and those set forth in R.C. 2929.12(D) and (E) relating to the likelihood of the offender's recidivism. Id.; R.C. 2929.12(A).

Additionally, the court may consider any other factor that it deems relevant to achieving the principles and purposes of sentencing. Id.

{¶ 34} Here, appellant pleaded guilty to two counts of aggravated robbery, in violation of R.C. 2911.01(A)(1), felonies of the first degree, with three-year mandatory gun specifications, and one count of failing to comply with an order of a police officer, in violation of R.C. 2921.331(B), a felony of the third degree. Under R.C. 2929.14, the statutory range for a first-degree felony is three to ten years, and the statutory range for a third-degree felony is one to five years. The court sentenced appellant to a seven-year prison term for each count of aggravated robbery, along with a mandatory three-year prison term for each of the gun specifications. The court also sentenced appellant to a one-year prison term for the charge of failure to comply with an order of a police officer. Thus, the trial court's sentence is within the permissible statutory range. Moreover, our review of the record shows that the trial court considered the principles and purposes of R.C. 2929.11, as well as the "seriousness" and "recidivism" factors under R.C. 2929.12. Accordingly, the sentence is not clearly and convincingly contrary to law.

{¶ 35} We must next determine whether the trial court abused its discretion. At the sentencing hearing, the court expressly considered the "very serious" nature of the offenses and incorporated the PSI by reference. The court also considered the victims' impact statements, which detailed the psychological effect the offenses had on both victims. The court noted that the two victims were "good Samaritans" who stopped to assist appellant. The court also noted that during the offense, appellant pointed a loaded weapon at one of the victim's heads and then chambered a round. The court also referred to appellant's claim that at the time he committed these offenses, he was on his way to his ex-girlfriend's house to commit suicide in front of her. The ex-girlfriend was a daycare provider for children. The court also specifically considered appellant's likelihood of recidivism and referred to his prior operation-while-intoxicated conviction. After considering these factors, the court sentenced appellant to the sentence the state originally recommended pursuant to the plea agreement. We find nothing in the record indicating that the court's decision to do so was unreasonable, arbitrary, or unconscionable. Therefore, we overrule appellant's sixth assignment of error.

{¶ 36} Based on the foregoing, we affirm in part and reverse in part and remand the case to the trial court for further proceedings consistent with this decision.

> Judgment affirmed in part
> and reversed in part,
> and cause remanded.

ABELE, P.J., and McFARLAND, J., concur.

Judith L. French, J., of the Tenth District Court of Appeals, sitting by assignment.